UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUSSELL KAEMMERLING, et. al, | ) ) ) |
| Plaintiffs, | ) |
| v. | ) Case No: 06-1389 (RBW) |
| | ) |
| HARLEY LAPPIN, DIRECTOR OF FEDERAL BUREAU OF PRISIONS, et. al | ) ) ) |
| | ) |
| Defendants. | ) ) |

### DEFENDANTS' MOTION TO DISMISS AND OPPOSITION
### TO THE MOTION FOR TEMPORARY RESTRAINING ORDER

Pursuant to Rule 12(b)(6), of the Federal Rules of Civil Procedure, Defendants, through counsel, respectfully move this Court to dismiss Plaintiffs' complaint with prejudice on the grounds that Plaintiffs fail to state a claim upon which relief can be granted. Defendants also oppose Plaintiffs' motion for temporary restraining order. There are no factual issues in dispute, and the questions before the Court are solely questions of law. In support of this motion and opposition, Defendants respectfully refer the Court to the attached memorandum of points and authorities.

Because this is a dispositive motion, the undersigned has not sought Plaintiffs' consent before filing it. LCvR 7 (m).[1]

---

[1] Pursuant to Fox v. Strickland, 837 F.2d 507 (D.C. Cir. 1988), *pro se* Plaintiffs should note that failure to respond to the instant motion to dismiss may result in the Court granting the motion and dismissing the complaint.

August 17, 2006                    Respectfully submitted,


_____/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney.


_____/s/_____
ANDREA McBARNETTE, D.C. Bar # 483789
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153

D. Martin Hill
Assistant General Counsel
Office of General Counsel
Bureau of Prisons

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUSSELL KAEMMERLING, et. al, <br><br> Plaintiffs, <br> v. <br><br> HARLEY LAPPIN, DIRECTOR OF FEDERAL BUREAU OF PRISONS, et. al <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No: 06-1389 (RBW) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS AND OPPOSITION
TO THE MOTION FOR TEMPORARY RESTRAINING ORDER**

Defendants Harley Lappin, Director of the Bureau of Prisons ("BOP"), and Alberto Gonzales, United States Attorney General, through counsel, respectfully submit this memorandum of points and authorities and Declaration of Scott Crow ("Crow Declaration") in support of Defendants' motion to dismiss and opposition to the motion for temporary restraining order.

**INTRODUCTION**

Plaintiffs, currently incarcerated inmates, seek a declaratory judgment, permanent injunctive relief and a temporary restraining order ("TRO") to prevent the enforcement of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. §14135) ("the DNA Act"). The DNA Act mandates that the BOP obtain DNA samples from inmates convicted of certain qualifying offenses. The Plaintiffs claim that the Act violates the Religious Freedom Restoration Act ("RFRA"); the First Amendment right to freely exercise religion; the equal protection clause; the Fourth Amendment right against unreasonable searches; and the Fifth Amendment

right against self-incrimination.  However, DNA testing violates neither Plaintiffs' religious freedoms nor their Constitutional rights.  Therefore, the Court should dismiss the Complaint for failure to exhaust administrative remedies and state a claim.  In addition, the Court should deny Plaintiffs' motion for a TRO.

## BACKGROUND

The five plaintiffs in this matter are all currently incarcerated by BOP at the Federal Correctional Institution at Seagoville, Texas ("FCI Seagoville").  None of the Plaintiffs are currently scheduled for collection of a DNA sample as noted in the Declaration of Scott Crow, Registered Nurse at FCI Seagoville.  Exhibit A, Crow Declaration at ¶ 5.  Russell Kaemmerling (#04899-017) was convicted for conspiracy to commit wire fraud and his projected release date is 02/03/10.  Ronnie Triplett (#15692-064) was convicted for distribution of methamphetamine and his projected release date is 11/11/17.  Rodney Doggett (#83059-080) was convicted for conspiracy to manufacture methamphetamine and his projected release date is 11/03/15.  Brian Culwell (#66552-079) was convicted for bank fraud and his projected release date is 01/22/09.  Daniel Siler (#10183-078) was convicted for distribution of marijuana and his projected release date is 05/26/09.

Plaintiffs claim that they are "Evangelical Christians who profess a belief in Jehovah God as Sovereign in the Universe..." Complaint at 11.  Plaintiffs claim that forcing them to provide DNA sampling is tantamount to laying the foundation for the rise of the anti-Christ.  Complaint at 11.  Plaintiffs filed their TRO as well as their complaint on August 3, 2006.

**STATUTORY HISTORY**

As the Court explained in <u>Word v. United States Probation Department</u>, No. 05-2689, 2006 WL 1995578, *3-4 (D.S.C. Feb. 14, 2006):

> On December 19, 2000, Congress passed the DNA Act in an attempt to provide a database for identifying perpetrators of unsolved crimes. This DNA Act is codified as 42 U.S.C. § 14135a(2001) and has been amended twice. The DNA Act, as amended, requires every convicted felon to provide a blood sample for submission into a database to be maintained by the Federal Bureau of Investigation ("FBI") regardless of the nature of the conviction.
>
> The DNA Act requires individuals in custody and individuals on release, parole, or probation to give a DNA sample if they are, or have been, convicted of a qualifying federal offense. 42 U.S.C. § 14135a(1), (2). The probation office is authorized by statute to collect DNA samples for those persons on release, parole or probation who have been convicted of any felony. 42 U.S.C. § 14135a (a)(2), (d). With the passage of the DNA Act, Congress also amended the supervised release statute, requiring the giving of a DNA sample as an explicit condition of supervised release. 18 U.S.C. § 3583(d). In the case of an individual on supervised release, parole, or probation, the probation office responsible for the supervision of such individual must arrange for the collection of the DNA sample. 42 U.S.C. § 14135a (a) (2). The probation office may use or authorize the use of such means as are reasonable necessary to detain, restrain, and collect a DNA sample from any individual who refuses to give a sample. 42 U.S.C. § 14135a (a)(4)(A). An individual who fails to give a DNA sample is guilty of a Class A misdemeanor. 42 U.S.C. § 14135a (a)(5).
>
> By statute, once the collection facility obtains the DNA sample, it sends the completed test kit to the FBI laboratory for analysis and entry into the Combined DNA Index System ("CODIS"). 42 U.S.C. § 14135a (c)(2), §§ 14132(a), 14135a(b); see <u>H.R. Rep. No. 106-900(I)</u> (Sept. 26, 2000), 2000 WL 1420163, at *26-27. CODIS is an indexing system created by the FBI in response to the congressional passage of the Violent Crime Control and Law Enforcement Act, ("Crime Control Act").
>
> The DNA Act strictly limits the permissible uses of the DNA information obtained from the DNA test to be used only for purposes specified in the Crime Control Act. 42 U.S.C. § 14135e(b). The Crime Control Act limits the disclosure of the test results to criminal justice agencies for law enforcement identification purposes, for use in judicial proceedings, and for criminal defense purposes to a defendant. 42 U.S.C. § 14132 (b)(3). The DNA Act penalizes the disclosure of the sample or result to a person without authorization to receive it or the obtaining of a sample or result without authorization. 42 U.S.C. § 14135e(c). In addition, the DNA Act provides for the expungement of DNA records from CODIS when a conviction for a qualifying offense is overturned. 42 U.S.C.

§ 14132 (d).

The DNA information in CODIS serves as the "genetic fingerprint" of the offender or unidentified individual; it is specifically designed not to convey any other information about the person, such as physical or medical characteristics. See H.R. Rep. No. 106-900(I), at *25, *27. The main purpose of the DNA Act is to assist federal, state, and local law enforcement authorities in solving past and future crimes, by "authorizing collection, analysis, and indexing of DNA samples from persons convicted of Federal crimes ..." Id. at * 8.

## STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), this court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the alleged facts. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Barr v. Clinton, 370 F.2d 1196, 1199 (D.C. Cir. 2004) (citing Kowal v. MCI Communications Corp., 85 F.3d 1271, 1276 (D.C. Cir.1994)). However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. Kowal, 16 F.3d at 1276. In deciding whether to dismiss a claim under Rule 12(b)6, the Court can only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference into the complaint, and matters about which the Court may take judicial notice. E.E.O.C. v. St. Francis Xavier Parochial School, 117 F.3d 621, 624-25 (D.C. Cir. 1997). The Court will dismiss a claim pursuant to Rule 12(b)6 only if the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

**ARGUMENT**

I.  **The Court should dismiss the Complaint because the Plaintiffs Failed to Exhaust their Administrative Remedies**

Plaintiffs do not allege that they exhausted their administrative remedies under the Prison Reform Litigation Act ("PLRA"); rather, Plaintiffs assert that they were not required to exhaust any administrative remedies. Complaint at 2-3. Plaintiffs allege that it would have been futile to pursue relief through administrative procedures before filing this suit and therefore they were not required to do so. Id. However, under the PLRA, 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In Porter v. Nussle, 534 U.S. 516, 532 (2002), the Supreme Court made clear that prisoners must exhaust inmate grievance procedures before bringing a civil action. The Supreme Court found PLRA's exhaustion requirement applies to all inmate suits about "prison life, whether they involve general circumstances or particular episodes." 534 U.S. at 532.

Thus, Plaintiffs' alleged belief that availing themselves of the grievance procedures would have been futile does not excuse their failure to exhaust the administrative remedy process. See Jeanes v. U.S. Dept. of Justice, 231 F. Supp.2d 48, 51 (D.D.C. 2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001) (finding that the Court will not "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise" ); Giano v. Goord, 250 F.3d 146, 150 (2nd Cir.2001) (finding that "alleged ineffectiveness of the administrative remedies that are available does not absolve a prisoner of his obligation to exhaust such remedies"); Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir.2000) (finding that "there is

no 'futility exception' to the PLRA exhaustion requirement" ). Therefore, the Court should dismiss the complaint because the Plaintiffs failed to exhaust their administrative remedies.

**II.        DNA Sample Collecting Does not Violate the First Amendment**

Plaintiffs claim that by being forced to undergo DNA testing, their free exercise rights will be impinged upon. Complaint at 3-17. They argue that the government has not shown a substantial interest in implementing the statute sufficient to outweigh their religious rights. "[T]he Supreme Court [has] held that a law that is religion-neutral and generally applicable does not violate the Free Exercise Clause even if it incidentally affects religious practice." Shaffer v. Saffle, 148 F.3d 1180, 1181-1182 (10th Cir. 1998) (State statute requiring prisoner to provide a DNA sample did not violate Free Exercise Clause of the First Amendment ) *quoting* Thiry v. Carlson, 78 F.3d 1491, 1496 (10th Cir.1996); see also, Employment Div., Dep't of Human Resources v. Smith, 494 U.S. 872, 878-79 (1990). "In so doing, the Court concluded that such laws may be enforced even absent a compelling governmental interest." Shaffer, 148 F.3d at 1182, see Smith, 494 U.S. at 882-885. Plaintiffs do not contend that the statute here is not neutral or generally applicable, nor have they alleged the statute was applied to them differently because of their religious beliefs. In fact, the DNA Act is religion-neutral and applicable to all inmates within a specified category - those who have committed crimes of a certain nature. Because religion-neutral and generally applicable laws, like the DNA Act, may be enforced even absent a compelling governmental interest, the Plaintiffs have failed to state a claim for denial of their First Amendment rights. See Shaffer, 148 F.3d at 1182.

**III.     DNA Sample Collecting Does not Violate Religious Freedom Restoration Act**

Under the RFRA, the government may not substantially burden a person's exercise of religion unless the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000bb-1(a), (b).    In order to be considered a "substantial" burden, the governmental action must "significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual [religious] beliefs;  must meaningfully curtail a [person's] ability to express adherence to his or her faith;  or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion." Werner v. McCotter, 49 F.3d 1476, 1480 (10th Cir.), *cert denied*, Thomas v. McCotter, 515 U.S. 1166 (1995).

The crux of Plaintiffs' objection to DNA sample collecting appears to be that they fear "submitting to DNA sampling, collection and storage with no clear limitations of use." Complaint at 9. The Plaintiff incorrectly state that "there exists no positive policy, process, technology, or plan to protect such collected DNA from such use, or abuse." Complaint at 9 -10. In fact, the DNA Act strictly limits the permissible uses of the DNA information obtained from the DNA test to the purposes specified in the Crime Control Act. 42 U.S.C. § 14135e(b). The Crime Control Act limits the disclosure of the test results to criminal justice agencies for law enforcement identification purposes, for use in judicial proceedings, and for criminal defense purposes to a defendant. 42 U.S.C. § 14132 (b)(3). The Plaintiffs claim that illegal abuse of the DNA could occur. Complaint at 9. However, the DNA Act penalizes the disclosure of the sample or result to a person without authorization to receive it or the obtaining of a sample or

7

result without authorization. 42 U.S.C. § 14135e(c).[2] These fears of alleged "no clear limitations of use" are therefore based on false grounds and thus do not amount to a "central tenet." See Weir v. Nix, 114 F.3d 817, 820 (8th Cir.1997). Therefore, Plaintiffs have not established in their Complaint that DNA sample collecting is a "substantial" burden and therefore can not establish that the DNA Act violates RFRA. 42 U.S.C. § 2000bb-1(a), (b).

Even assuming *arguendo* that DNA sample collecting did constitute a substantial burden, the DNA sample collecting would still be permissible because it is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000bb-1(a), (b). The main purpose of the DNA Act is to assist federal, state, and local law enforcement authorities in solving past and future crimes, by "authorizing collection, analysis, and indexing of DNA samples from persons convicted of Federal crimes ..." See H.R. Rep. No. 106-900(I) at * 8. Thus, the DNA Act serves a compelling need. Cf. Roe v. Marcotte, 193 F.3d 72, 79 (2d Cir. 1999) (obtaining DNA evidence from blood samples overrides the Fourth Amendment interests of inmates objecting to mandatory blood samples); Jones v. Murray, 962 F.2d 302, 307 (4th Cir.) cert denied, 506 U.S. 977 (1992) (same).

Moreover, DNA sample collecting has been recognized as a minimally restrictive means.

---

[2] Regarding the constitutional challenge to a DNA statute based on potential misuse of DNA samples, the Court in Johnson v. Quander, 370 F. Supp.2d 79, 88 (D.D.C. 2005) noted that "[a]lthough the hypotheticals offered by the plaintiff raise legitimate concerns, the Court must decide the constitutionality of the statutes before it based on the purpose for which they were designed and have been utilized, and not on how the plaintiff perceives the statutes might be used in the future. . . . And, should the plaintiff's hypotheses one day come to fruition, the plaintiff can certainly challenge the improper use of these new developments in a subsequent action. "

8

For example, in Schumer v. California, 384 U.S. 757, 777 (1966) the Court allowed the taking of a blood sample and noted that blood tests "are a commonplace in these days of periodic physical examination and experience with them teaches that the quantity of blood extracted is minimal, and for most people the procedure involves virtually no risk, trauma, or pain, . . ." Here, the DNA Act services a compelling need in a manner least restrictive of furthering that compelling governmental interest. Therefore, the DNA Act does not violate the RFRA.

### IV.    DNA Act does not Violate Equal Protection Rights

Plaintiffs claim that the DNA Act violates equal protection rights because the Act requires only incarcerated felons to submit to DNA testing. Plaintiffs claim that this creates disparate treatment between those felons who are incarcerated, those who are on supervised release and felons who are, at this time, "free." See Complaint at 18-21. In Marcotte v. Bosco, 193 F.3d 72 (2d Cir. 1999), the Court applied the rational basis test where a sex offender challenged a DNA statute in part because the statute targeted incarcerated sex offenders but not prior sex offenders who were then currently residing in the community. "Because [the plaintiff] alleges a classification based on the nature of his offense, his challenge to the DNA statute is entitled to only "rational basis" and not "strict scrutiny" review. 193 F.3d at 82. See Chapman v. United States, 500 U.S. 453, 465 (1991) (applying rational basis test to classification based on nature of offense). Similarly here, the plaintiffs allege a classification (incarcerated felons) that is entitled to only a rational basis review. See also Tucker v. Branker 142 F.3d 1294, 1300 (D.D.C. 1998) (federal prisoners are not a suspect class for the purposes of constitutional analysis); Nicholas v. Tucker, 114 F.3d 17, 21 (2d Cir. 1997) (same).

Under the rational basis test, the statute is presumed to be valid and will be sustained if

the classification is rationally related to a legitimate state interest." Bankers Life & Cas. Co. v. Crenshaw, 486 U.S. 71, 81 (1988). Viewing the matter through the lense of the "rational basis" test, the government has a rational interest in securing and processing DNA samples of individuals with qualifying convictions, *i.e.*, ensuring compliance with conditional release requirements, preventing future crimes, and solving past and future offenses. See Johnson v. Quander, 370 F. Supp.2d 79, 95 (D.D.C. 2005) (reiterating the purposes of the DNA statute). Moreover, although Plaintiffs complain that felons currently at large are not subject to the DNA Act, as the Court found in Marcotte, a DNA statute's "underinclusivieness" does not provide a basis for invalidating it. 193 F.3d at 82. See also Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 487-89 (1955) (under rational basis review, legislature may proceed "one step at a time"). Therefore, the DNA Act survives a rational basis analysis and Plaintiffs' equal protection claim must be dismissed.

**V.    DNA Testing Does Not Violate Fifth Amendment Right Against Self-Incrimination**

Plaintiffs claim that requiring DNA samples from inmates amounts to compulsory self-incrimination, fails because "DNA samples are not testimonial in nature, and thus do not violate a criminal defendant's Fifth Amendment protection from self-incrimination." Taylor v. Norton, No. 05-1634 2006 WL 1071517, *3 (D.D.C. Apr 21, 2006); see, e.g., Boling v. Romer 101 F.3d 1336, 1340 (10th Cir.1996) ( holding DNA samples are not testimonial in nature and collecting DNA samples from inmates does not violate the Fifth Amendment right against self-incrimination); Moss v. Johnson, 2004 WL 2248262 at 2 (N.D.Tex. Oct. 6, 2004) (rejecting Texas prisoner's challenge based on Fifth Amendment protection against self-incrimination because DNA sample was not "testimonial or communicative in nature"); Padgett v. Ferrero, 294

F. Supp.2d 1338, 1244 (N.D.Ga. 2003) (rejecting Georgia prisoners' claims that DNA samples violate Fifth Amendment and Georgia Constitution because samples are not testimonial in nature), *aff'd,* 401 F.3d 1273 (11 Cir. 2005); cert. denied sub nom. Boulineau v. Donald, 126 S.Ct. 352 (2005).

## VI. DNA Collecting Does Not Violate Fourth Amendment

Plaintiffs claim that collection and storage of their DNA is unconstitutional under the Fourth Amendment.  However, every court of appeals that has considered the issue, including the Court of Appeals for the District of Columbia, has concluded that the DNA Act is constitutional.  Johnson v. Quander 440 F.3d 489 (D.C. Cir.  2006); United States v. Kincade, 379 F.3d 813 (9th Cir. 2004) (en banc) *cert. denied*, 544 U.S. 924 (2005); Nicholasv. Goord, 430 F.3d 652 (2d Cir. 2005); United States v. Sczubelek; 402 F.3d 175 (3d Cir. 2005); Jones v. Murray, 962 F.2d 302 (4th Cir. 1992)*;* Groceman v. U.S. Dep't of Justice, 354 F.3d 411 (5th Cir. 2005) (per curiam); Green v. Berge, 354 F.3d 675 (7th Cir. 2004); United States v. Kimler, 335 F.3d 1132 (10th Cir. 2003); Padgett v. Donald, 401 F.3d 1273 (11th Cir. 2005).  Some courts have upheld the DNA Act under the "special needs" exception to the warrant requirements.  See e.g., ; Nicholasv, 430 F.3d at 668; Green, 354 F.3d at 678-79.  Others have upheld the DNA Act under the Fourth Amendment's traditional "totality-of the-circumstances" standard.  See e.g. Padgett,; 401 F.3d at 1280; Groceman, 354 F.3d at 413-14.

The United States Court of Appeals for the District of Columbia Circuit  recently addressed the issue in Johnson, 440 F.3d 489.  In Johnson, a District of Columbia probationer brought a Fourth Amendment claim regarding the Act.  The Court held that while DNA testing is certainly a "search" for the purposes of the Fourth Amendment, the constitutional protections of

11

the amendment differ for those within the criminal justice system (probationers or inmates) and citizens.  Id. at 496.  The Court asserted that probationers have lesser privacy interests than ordinary citizens and that the privacy invasion caused by a blood test is relatively small.  Id. see Griffin v. Wisconsin, 483 U.S. 868, 875 (1987); Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 625 (1989).  Balancing the reduced privacy interests of a probationer against the interests of the government in monitoring probationers, deterring recidivism, and protecting the public, the Court found that the Fourth Amendment "certainly permits the collection of blood sample for a convicted felon" and that it is "reasonable" for the government to collect DNA samples from felons on probation.  Johnson, 440 F.3d at 497.  Thus, it is reasonable for the government to collect DNA samples from felons and the collection and storage of their DNA is constitutional under the Fourth Amendment.

**VII    The Court Should Deny Plaintiffs' Motion for a TRO**

The criteria that govern the issuance of temporary and preliminary injunctive relief in the District of Columbia are well-settled.  In order for the Court to exercise its power to grant this extraordinary relief, the Plaintiffs must show:  (1) a strong likelihood of prevailing on the merits of its claim; (2) that without injunctive relief she will suffer irreparable harm; (3) that, balancing hardships, the issuance of an injunction will not substantially harm other interested parties; and (4) that the public interest favors the requested injunction.  Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985); Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam); Washington Metropolitan Area Transportation Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843-44 (D.C. Cir. 1977).  This balancing test is a flexible one, permitting a court to issue injunctive relief when the likelihood of success is high, although

probability of irreparable harm may be low, and vice versa. See Population Institute v. McPherson, 797 F.2d 1062, 1078 (D.C. Cir. 1986). Nevertheless, although it is a flexible standard, both elements of likelihood to prevail and irreparable harm must be shown. District 50, United Mine Workers of Am. v. International Union, United Mine Workers of Am., 412 F.2d 165, 167 (D.C. Cir. 1969) ("A party seeking injunctive relief must show both that it will suffer irreparable harm if an injunction is not issued and that there is a substantial likelihood it will prevail on the merits when the case is tried."). Preliminary relief is a drastic and extraordinary form of relief that should not be granted absent a clear and convincing showing by the moving party, Yakus v. United States, 321 U.S. 414 (1944); Kahane v. Secretary of State, 700 F. Supp. 1162, 1165 (D.D.C. 1988). This is an exacting standard that, as explained below, Plaintiffs cannot meet.

      1.      Plaintiffs Cannot Show Any Likelihood of Prevailing on the Merits

Plaintiff cannot show any likelihood of success on the merits of their claims. As discussed in detail *supra*, not only did Plaintiffs fail to exhaust their administrative remedies, DNA sample collecting simply does not violate the Plaintiffs' constitutional rights or rights under the RFRA.

      2.      Plaintiffs Will Not Be Irreparably Harmed If Injunctive Relief Is Not Granted

To justify the granting of a temporary restraining order, the proposed harm must be immediate and irreparable and not speculative. Armstrong v. Bush, 807 F. Supp. 816 (D.D.C. 1992). That is not the case here as there is no impending harm befalling Plaintiffs at this time. Plaintiffs are not scheduled to undergo DNA testing. Crow Declaration at ¶ 5. Scott Crow, Registered Nurse at the FCI Seagoville, states in his declaration, that it is the policy of FCI

Seagoville to schedule the collection of DNA samples from inmates approximately one year prior to their release from custody or transfer to a halfway house. None of the Plaintiffs are currently scheduled for release or transfer within one year of today and none are currently scheduled for a DNA sample collection. See Irby Decl. at ¶ 5. In fact, it is possible that the soonest one of these plaintiffs would have their DNA sample collected is 2008, as Plaintiff Daniel Siler's projected release date is 05/26/09. In light of this fact, any argument for a temporary restraining order in this case fails.

      3.      <u>The BOP Will Suffer Substantial Injury If An Injunction Is Granted</u>

If Plaintiffs are granted a TRO, other inmates convicted of similar offenses would also undoubtedly claim that their religious principles (even if they are not sincerely held) are violated by the DNA Act and will also seek TROs. Injunctive relief in this case would be especially detrimental because the BOP will not be able to effectively perform its obligation under the DNA Act in regards to other felons.

      4.      <u>An Injunction in This Case Would Harm the Public Interest</u>

The DNA Act was created with the governments' *duty* to the public in mind. As stated earlier, the government is attempting to ensure compliance with conditional release requirements, preventing future crimes, and solving past and future offenses. See <u>Johnson</u>, 370 F. Supp.2d at 95. Restraining the BOP from collecting DNA samples may thwart the preventing and solving of past and future crimes. Therefore, a TRO should not be granted.

Plaintiffs cannot demonstrate a substantial likelihood of success on the merits or that they will suffer immediate irreparable harm. Moreover, Plaintiffs can not demonstrate that a significant harm to themselves outweighs the palpable harm that an injunction would cause to

14

the BOP and the public at large.  The Court should deny the Plaintiffs' motion for a temporary restraining order.

## CONCLUSION

For the above reasons, Defendants respectfully request that this Court dismiss the complaint with prejudice and deny Plaintiffs' motion for a TRO.

August 17, 2006                              Respectfully submitted,


_____/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney.


_____/s/_____
ANDREA McBARNETTE, D.C. Bar  # 483789
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153

D. Martin Hill
Assistant General Counsel
Office of General Counsel
Bureau of Prisons

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing DEFENDANTS' MOTION TO DISMISS AND OPPOSITION TO THE MOTION FOR TEMPORARY RESTRAINING ORDER and proposed Order, was mailed first class postage prepaid, this 17th day of August, 2006 to:

Russell Kaemmerling, #04899-017
FCI SEA  P.O. Box 9000
Seagoville, Texas 75159-9000

Rodney S. Doggett, #83059-080
FCI SEA  P.O. Box 9000
Seagoville, Texas 75159-9000

Brian Culveww #66552-079
FCI SEA  P.O. Box 9000
Seagoville, Texas 75159-9000

Ronnie G. Triplett #15692-064
FCI SEA  P.O. Box 9000
Seagoville, Texas 75159-9000

Daniel R. Biler # 10183-078
FCI SEA  P.O. Box 9000
Seagoville, Texas 75159-9000

_____
ANDREA McBARNETTE, D.C. Bar  # 483789
Assistant United States Attorney
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 514-7153