UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RUSSELL KAEMMERLING, )
et. al, )
 )
       Plaintiffs, )
    v. ) Case No: 06-1389 (RBW)
 )
HARLEY LAPPIN, DIRECTOR OF )
FEDERAL BUREAU OF PRISONS, )
et. al )
 )
       Defendants. )

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants Harley Lappin, Director of the Bureau of Prisons ("BOP"), and Alberto Gonzales, United States Attorney General, through counsel, respectfully submit this reply in support of Defendants' motion to dismiss.

**ARGUMENT**

**I.    Plaintiffs Failed to Exhaust their Administrative Remedies**

Plaintiffs do not allege that they exhausted their administrative remedies under the Prison Reform Litigation Act ("PLRA") to seek redress for their challenge to the collection of DNA samples in compliance with the DNA Backlog Elimination Act ("DNA Act"). Plaintiffs assert that they were not required to exhaust any administrative remedies because: 1) their complaint is not about prison conditions; and 2) "where the relevant administrative procedure lacks authority to provide relief or to take any action whatsoever in response to a complaint" exhaustion is not required. see Plaintiffs' Opposition at pages 4-6 (quoting from Booth v. Churner, 532 U.S. 731

(2001)).[1]

1.   *DNA collection is a prison condition*

Challenges to DNA collection have been found to constitute a prison condition which fall within the scope of the PLRA, and for which exhaustion of administrative remedies have been required.  United States v. Carmichael, 343 F.3d 756, 761 (5th Cir. 2003), cert. den. 540 U.S. 1136 (2004) (holding DNA collection was a prison condition that had to be challenged through a separate civil action after exhaustion of administrative remedies); Miller v. U.S. Department of Justice, No. C 02-5218, 2002 WL 31898213 (N.D.Cal. Dec. 19, 2002) (requiring exhaustion in challenge to DNA collection).

2.   *Exhaustion is a prerequisite to suit*

Plaintiffs incorrectly construe the PLRA and its mandate that "no action shall be brought with respect to prison conditions under . . . any Federal law . . . until such administrative remedies ***as are available*** are exhausted." 42 U.S.C. § 1997e(a) (emphasis added).  As the Supreme Court explains in Booth, what the statute requires is exhaustion of processes not of forms of relief.  532 U.S. at 738-741.  The Supreme Court's analysis of this issue clearly shows that plaintiffs' argument is flawed.  In Booth, the Supreme Court explains in great detail that:

> [w]e find clearer pointers toward the congressional objective in two considerations, the first being the broader statutory context in which 'available' 'remedies' are mentioned. The entire modifying clause in which the words occur is this: 'until such administrative remedies as are available are exhausted.' The 'available' 'remed[y]' must be 'exhausted' before a complaint . . . may be entertained. While the modifier 'available' requires the possibility of some relief for the action complained of (as the parties agree), the word

---

[1]  Plaintiffs use of the Booth is out of context and does not support their proposition that they are not required to exhaust. The Court in Booth was merely explaining the parties' positions regarding the availability of the administrative remedies, which was construed by the Court as the crux of the case.  See Booth, at 736.

> 'exhausted' has a decidedly procedural emphasis. It makes sense only in referring to the procedural means, not the particular relief ordered. It would, for example, be very strange usage to say that a prisoner must 'exhaust' an administrative order reassigning an abusive guard before a prisoner could go to court and ask for something else; or to say (in States that award money damages administratively) that a prisoner must 'exhaust' his damages award before to going to court for more. How would he 'exhaust' a transfer of personnel? It makes no sense to demand that someone exhaust 'such administrative [redress]' as is available; one 'exhausts' processes, not forms of relief and the statute provides that one must.
>
> A second consideration, statutory history, confirms the suggestion that Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible. Before § 1997e(a) was amended by the Act of 1995, a court had discretion (though no obligation) to require a state inmate to exhaust 'such . . . remedies as are available,' but only if those remedies were 'plain, speedy, and effective.' 42 U.S.C. § 1997(e)a (1994 ed.). That scheme, however, is now a thing of the past, for the amendments eliminated both the discretion to dispense with administrative exhaustion and the condition that the remedy be 'plain, speedy, and effective' before exhaustion could be required.
> . . .
>
> Congress' imposition of an obviously broader exhaustion requirement makes it highly implausible that it meant to give prisoners a strong inducement to skip the administrative process simply by limiting prayers for relief to [those] not offered through administrative grievance mechanisms.

The Supreme Court in Booth correctly interpreted Congress' intent and the language used in the statute to mean that inmates must exhaust the administrative processes regardless of the relief sought. Thus, even "when the prisoner seeks relief not available in grievance proceedings, exhaustion is a prerequisite to suit." Porter v. Nussle, 534 U.S. 516, 524 (2002).

## II.   DNA Collection does not Violate Plaintiffs' First Amendment Rights

In analyzing regulations which restrict the free exercise of religion in a prison setting, the court in Levitan v. Ashcroft, 281 F.3d 1313 (D.C. Cir. 2002), followed the four prong test first enunciated in Turner v. Safley, 482 U.S. 78 (1987):

First, there must be a valid, rational connection between the regulation and the legitimate

>interest put forth to justify it.  Second, there must be a determination whether the prisoners retain alternative means of exercising their asserted rights.  Third, there must be an assessment of the impact accommodation of the asserted constitutional right will have on guards, other inmates, and prison resources.  Finally, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation."

Id. at 90.  Here, the DNA Act satisfies the four prongs of the Turner test.

*1.      Valid, rational connection between regulation and the legitimate interest*

The DNA Act and the corresponding BOP procedures are valid because they have a rational connection with a legitimate governmental interest.  The government has an interest in the identification of criminals and investigation of crimes.  Collecting DNA samples provides an effective means to identify criminals and investigate crime.  Thus, the DNA Act and corresponding BOP procedures have a valid and rational connection to the a legitimate governmental interest.

*2.      Plaintiffs retain alternative means to exercise their religious preference*

Plaintiffs do have alternative means to exercise their religious preference.  In analyzing this prong of the Turner analysis, the Supreme Court considered whether the inmates were deprived of "all means of expression."  Turner, 482 U.S. at 92.  In O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987), the Supreme Court upheld a prison policy which prevented some Muslim prisoners from participating in a Muslim service as the plaintiffs were not deprived of "all forms of religious exercise but instead allow[ed] participation in a number of Muslim religious ceremonies."  O'Lone, 482 U.S. at 343.  Here, Plaintiffs have the ability to participate in all other observances of their religion.  Therefore, the Plaintiffs are not being deprived of all forms of religious exercise and they do have alternative means to exercise their religious preference.

3.    *Assessment of the impact accommodation on guards, other inmates, and prison resources*

To give plaintiffs the relief they seek would impose a tremendous burden on the BOP as inmates wanting to avoid the statutory mandate of the DNA Act would raise religious objections. This would cause serious repercussions in the identification of criminals and criminal investigations. Any exceptions to the statutory mandate would cause problems for prison administrators. See United States v. Jefferson, 175 F. Supp.2d 1123, 1132 (N.D. Ill. 2001) ("Any judicial attempt to carve out a religious exception will result in significant administrative problems for the [agency] and open the door to a myriad of claims for religious exceptions."). One of the main principles of correctional management is to provide all inmates with equal opportunities and not to afford preferential treatment to any particular group or inmate. The principle of equity was preserved in the procedures at issue here. "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed decision of corrections officials." Turner, supra, at 90. Accommodating Plaintiffs' request for exemption to the DNA Act would have a negative impact in prisons and in the law enforcement activities for which the samples are used.

4.    *Absence of ready alternatives*

There are no ready alternatives to accommodate the Plaintiffs' request. The statute mandates that all inmates convicted of felonies be subjected to the collection of DNA samples and no exceptions are provided for in the statute. Furthermore, if a plaintiff can "point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." Id. at 91. The Plaintiffs have not been able to point to an easy

alternative for the collection of DNA.  Here, the absence of ready alternatives is evidence of the reasonableness of the DNA Act.

## III.     DNA Act does not Violate the RFRA

Plaintiffs allege that the DNA Act violates The Religious Freedom Restoration Act ("RFRA") by substantially burdening their exercise of religion.  Under the RFRA, the government may not substantially burden a person's exercise of religion unless the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest.  42 U.S.C. § 2000bb-1(a), (b).

*1.     Substantial Burden*

Plaintiffs can not demonstrate that the DNA Act substantially burdens their exercise of religion.  To show a substantial burden, "[t]he interference must be more than an inconvenience; the burden must be *substantial* and an interference with a tenet or belief to religious doctrine." Graham v. Commissioner of Internal Revenue Service, 822 F.2d 844, 850-51 (9th Cir. 1987), aff'd sub nom, Hernandez v. Commissioner of Internal Revenue Service, 490 U.S. 680 (1989). "A substantial burden constitutes 'putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  Cockrell-El v. District of Columbia, 937 F. Supp. 18 (D.D.C. 1996) (quoting Hobbie v. Unemployment Appeals Comm'n of Fla., 480 U.S. 136, 141 (1987)).  "A substantial burden does not arise merely because 'the government refuses to conduct its own affairs in ways that comport with the religious beliefs of particular citizens.'" Alliance for Bio-Integrity v. Shalala, 116 F. Supp.2d 166 (D.D.C. 2000) (quoting Bowen v. Roy, 476 U.S. 693, 699 (1986)). Plaintiffs' allegations do not rise to the level of a substantial burden - only an inconvenience which does not significantly inhibit or constrain his religious conduct or

expression. Nothing in the complaint indicates any fundamental or substantial interference with the exercise of their religious rights. In accordance with RFRA, the BOP attempts to accommodate the practices of religion of all inmates of all religions at correctional institutions. However, an inconvenience to an inmate's practice of religion is not a substantial interference. Thus, the DNA Act does not amount to a substantially burden.

    2.    *Government has a compelling interest*

Even assuming *arguendo* that the BOP policy imposes a substantial burden on Plaintiffs' religious practices, such a burden would be justified because there is a compelling governmental interest. 42 U.S.C. § 2000bb-1(a), (b). To be compelling, the "interest must be of the 'highest order.'" Wisconsin v. Yoder, supra, 406 U.S. at 215. "Whether something qualifies as a compelling interest is a question of law." United States v. Hardman, 297 F.3d 1116, 1127 (10th Cir. 2002) (citation omitted).

The government has a compelling interest in obtaining DNA samples from plaintiffs because they were all convicted of felonies. As the D.C. Circuit has concluded:

> . . . the government is 'quite justified' in taking steps to keep tabs on ex-convicts, to deter recidivism, and to solve past and future crimes. . . . The need to ensure that the community 'is not harmed by the [inmate's] . . . permits the government 'a degree of impingement upon [an inmate's] privacy that would not be constitutional if applied to the public at large.

Johnson v. Quander, 440 F.3d 489, 497 (D.C. Cir. 2006). There is a compelling interest in developing a database with DNA information of all convicted inmates in order to aid in the law enforcement purposes specified in the statute.

*3.     DNA Act constitutes the least restrictive means*

As a minimally invasive procedure, drawing blood for DNA sampling is the most reliable means and the least restrictive means of implementing the compelling governmental interest in the information obtained from the DNA samples.  It is firmly established that "the intrusion occasioned by a blood test is not significant, since such 'tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain.' " Schmerber v. California, 384 U.S. 757, 771; see also Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 625 (1989).  "For parolees and supervised releasees especially-individuals who while in custody have been lawfully subject to much more severe intrusions of their corporeal privacy than a sterile blood draw conducted by a trained medical professional, and who therefore leave prison with substantially reduced sensitivities to such exposure-the DNA Act's compelled breach of their bodily integrity is all the less offensive." United States v. Kincade 379 F.3d 813, 836 (9th Cir. 2004), cert. den. 544 U.S. 924 (2005).

Plaintiffs argue that the government can not prove that the DNA Act is the least restrictive means in furthering its compelling interests.  Plaintiffs Opp. at 15.  However, the government is not required to analyze every single alternative in order to satisfy this prong of RFRA. See Hamilton v. Schriro, 74 F.3d 1545, 1556 (8th Cir. 1996), cert. denied, 519 U.S. 874 (1996) (It would be a herculean burden to require prison administrators to refute every conceivable option in order to satisfy the least restrictive means prong of RFRA).  Justice Blackmun warned that "[a] judge would be unimaginative indeed if he could not come up with something a little less 'drastic' or a little less 'restrictive' in almost any situation." Id.  (quoting

Illinois State Board of Elections v. Socialist Worker Party, 440 U.S. 173, 188-89 (1979)(Blackmun, concurring)). Thus, courts should exercise judicial restraint and defer to the prison administrators' decisions with respect to the implementation of procedures in prisons and to Congress in the passing of law enforcement laws. In light of these reasons, the BOP has satisfied the least restrictive means prong of the RFRA.[2]

**IV.     DNA Collection does not Violate the Fourth Amendment**

In Johnson v. Quander 440 F.3d 489 (D.C. Cir. 2006), the Court of Appeals for the District of Columbia concluded that storage of prisoner DNA is constitutional under the Fourth Amendment. In fact, every court of appeals that has considered the issue has concluded that the DNA Act is constitutional. See e.g., United States v. Kraklio, 451 F.3d 922, 924 (8th Cir. 2006) (listing Fourth Amendment cases decided by the circuit courts).[3] The challenges plaintiffs raise are not novel and have been entertained and rejected by the D.C. Circuit Court - as well as every other federal circuit court. Here, this Court should likewise reject Plaintiffs' challenges under the Fourth Amendment.

**V.     DNA Act does not Violate Equal Protection Clause**

---

[2] To find a RFRA violation, courts have also looked at whether "the state condition[ed] receipt of an important benefit upon conduct proscribed by a religious faith, or that [it denie[d] such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and violate his beliefs." Cockrell-El, 937 F. Supp. at 21. See Sherbert v. Verner, 374 U.S. 398, 406 (1963) (finding that conditioning "the availability of benefits upon the appellant's willingness to violate a cardinal principle of her religious faith effectively penalizes the free exercise of her constitutional liberties."). The BOP has not conditioned any benefit upon plaintiffs' submission for the drawing of the DNA testing. Therefore, neither the DNA Act nor the BOP violate the RFRA.

[3] The only distinction between the circuits have been in the application of either the "special needs" or the "reasonableness" tests. Kraklio, 451 F.3d at 924.

Plaintiffs complain their equal protections rights have been violated as felons who are released are not subject to the DNA Act. Plaintiffs' Opp. at 26. Thus, they contend not all felons have to undergo the taking of the DNA and as a result their equal protection rights are being violated. Id.

In an equal protection challenge by an inmate, the District Court for the District of Columbia held:

> A prisoner must establish two necessary predicates to maintain a claim for a denial of equal protection absent allegations that he or she is a member of a suspect class. First, the prisoner must establish that she was treated differently than other prisoners in her circumstances. Second, she must establish that such unequal treatment was the result of intentional or purposeful discrimination. Even if the prisoner can make this threshold showing, the government need only show that the regulation and accompanying policy statement create a classification between similarly situated individuals that is rationally related to a legitimate government interest. If the government can make this showing, then the regulation does not violate equal protection.

Farmer v. Hawk, No. 94-CV-2274, 1996 WL 525321, 9 (D.D.C., Dec. 5, 1996)[citations omitted].

*1.  Plaintiffs not treated differently than those similarly situated*

Plaintiffs can not establish that they are similarly situated to those released felons not required to comply with the DNA Act. Plaintiffs are similarly situated to other convicted incarcerated felons still serving their sentences. Plaintiffs offer no evidence that they are being treated differently from other incarcerated inmates or that they are being treated differently on account of their religious beliefs.

*2.     No intentional or purposeful discrimination*

  Plaintiffs can not establish that the alleged unequal treatment was the result of intentional or purposeful discrimination. Plaintiffs offer no evidence that the statute or BOP policy was enacted with any discriminatory intent. Indeed, plaintiffs do not allude to the legislative history of the DNA Act nor do they assert that the statute and BOP procedures are in any way the result of discriminatory intent.[4]

*3.     DNA Act is rationally related to a legitimate government interest.*

  Plaintiffs complain that felons currently at large are not subject to the DNA Act. However, as the Court found in Marcotte v. Bosco, 193 F.3d 72 (2d Cir. 1999), a DNA statute's "underinclusivieness" does not provide a basis for invalidating it. 193 F.3d at 82. In light of these reasons, Plaintiffs have failed to show their equal protection rights under the law have been violated.

---

[4] The fact that Plaintiffs' offenses fall within the scope of the DNA Act, while offenses of others incarcerated may not, does not violate the equal protection clause either. "Treating prisoners differently based upon the nature of their crimes does not violate the equal protection clause." Russell v. Eaves, 722 F.Supp. 558, 560 (E.D.Mo. 1989).

## **CONCLUSION**

For the above reasons, Defendants respectfully request that this Court dismiss the complaint with prejudice.

September 21, 2006                    Respectfully submitted,


_____/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney.

_____/s/_____
ANDREA McBARNETTE, D.C. Bar  # 483789
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153

Alma G. Lopez
Assistant General Counsel
Office of General Counsel
Bureau of Prisons

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS was mailed first class postage prepaid, this 21st day of September, 2006 to:

Russell Kaemmerling, #04899-017
FCI SEA  P.O. Box 9000
Seagoville, Texas 75159-9000

Rodney S. Doggett, #83059-080
FCI SEA  P.O. Box 9000
Seagoville, Texas 75159-9000

Brian Culwell #66552-079
FCI SEA  P.O. Box 9000
Seagoville, Texas 75159-9000

Ronnie G. Triplett #15692-064
FCI SEA  P.O. Box 9000
Seagoville, Texas 75159-9000

Daniel R. Biler # 10183-078
FCI SEA  P.O. Box 9000
Seagoville, Texas 75159-9000

_____
ANDREA McBARNETTE, D.C. Bar  # 483789
Assistant United States Attorney
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 514-7153